Good morning, Your Honors, and may it please the Court. My name is James Nelson, and I represent the defendants. I'd like to reserve two minutes for rebuttal. This Court should reverse the District Court's refusal to enforce the arbitration agreement. The decision below has two fundamental errors. First, the Court found a lack of mutual assent to arbitrate. That holding is wrong because it impermissibly considered parole evidence to contradict the terms of the contract. California law says that courts must enforce integration clauses unless there are allegations of fraud, duress, or illegality, and there are none here. The District Court also found a lack of mutual assent based on a phrase in the franchise disclosure document saying a clause may not be enforceable, but the Court ignored the document's state cover pages. Plaintiffs don't dispute that they clearly say the contract requires binding arbitration, and no court has held a lack of mutual assent when such language is present. Second, the Court's unconscionability holding is wrong. At most, there is only minimal procedural unconscionability here, so plaintiffs have to prove a high degree of substantive unconscionability, but they did not. The Court found three aspects unconscionable—a carve-out provision from arbitration, a shortened limitations period, and liquidated damages. But California law holds the first two are permissible. Narrow, non-mutual exceptions to arbitration to protect trademarks and intellectual property are permissible if the business reason is in the contract, and it is here. And shortening of time to sue is also permissible, whereas here it applies mutually to both parties. The third aspect, the liquidated damages clause, should have been severed. The Court did not apply the California standard for severance. A clause can and should be severed if it's collateral to the central purpose of the contract, which is legal—in this case, arbitrating claims. So even if unconscionable, all three provisions should have been severed because they're plainly collateral to the arbitration itself, which would be unaffected by just deleting these  So for these reasons, we believe the Court should reverse. I'm turning first to mutual assent, Your Honors. The Court relied entirely for its— I want to ask you to address them in a different order, because I think—my colleagues might view this differently, but I see the unconscionability issue as a larger problem for you. So it would be helpful to me if you focused at least your initial comments on that issue. So we know there's two components, the procedural and the substantive, and the sort of sliding scale in that an adhesion contract is procedurally unconscionable, although it's just a slight factor. It's not egregious unconscionability. But you have three components that you've acknowledged with respect to substantive unconscionability, one of which I think you are just flat out agreeing was unconscionable, which was the $10,000 liquidated damages clause. I haven't seen anything in your briefing or what you've said this morning to suggest that you're trying to defend that. Correct, Your Honor. Under California law, because it's not mutual, we're not disputing that it was unconscionable, but it clearly is severable. So the district courts seem concerned by the disparity in power between the parties and that you have the largest distributor of baked goods up against very small sort of mom-and-pop operations, people who don't have a lot of sophistication, wealth, resources at their disposal to be in a dispute with a major company. So the district courts seem to think that the problem with these provisions in this contract was that it was a larger company just sort of taking advantage of and beating up on the little guy. So then the district court decided not to sever. And I am struggling to see how that was an abuse of discretion. Well, yes, Your Honor. I think on the big company versus little company aspect, that goes to procedural unconscionability and adhesion. That is not relevant at all to the substantive unconscionability analysis. And so whether these provisions are substantively unconscionable or not, we just have to look at the terms of the contract and California cases deciding these terms. And we have cases that we've cited, Your Honor, on the first two provisions saying that they are not substantively unconscionable, let alone a high degree of substantive unconscionability, which is required here. And the district court actually never even held that there was a high degree of substantive unconscionability under the sliding scale approach. Why wouldn't we consider limiting the period to bring a claim from what could be between one and four years to 30 or 60 days to be a high degree of unconscionability? Well, Your Honor, this court in Tompkins and in Soltani and both of those cases held that a mutual shortening of statute of limitations is not unconscionable. The primary factor under California case law for unconscionability is whether something is unfairly one-sided. It's undisputed that that provision that you're talking about is not one-sided at all. Well, except for if you look at it from a practical point of view, in light of the provision that talks about the claims that are carved out from arbitration, and those are the claims that are more likely to be brought by your client, then the 30 days, while facially is not one-sided, practically it looks like it is more one-sided because it's only going to apply to the claims that are more likely to be brought by the other side of this case. Yes, Your Honor, thank you for bringing that up because I think that there was clear error here in holding that the arbitration agreement and what claims have to be arbitrated or not is somehow lopsided. Here the covered disputes that have to go to arbitration are any and all disputes between the parties. And there's a long list of about eight examples, almost all of which apply to both parties. The district court below focused on one aspect of that list, which was employment claims, and then focused on two carve-outs in the excluded disputes. But there are actually four other excluded disputes that apply to both plaintiffs and defendants. One of those is specific performance. And Beanbow Bakeries was just sued by an independent contractor for specific performance, and that claim went to court because it's one of the carved-out claims in the excluded disputes. And so here we just have a very narrow carve-out for IP and trademark claims. That's pretty significant though, isn't it? It's the company's ability to protect the family jewels in terms of how it operates and how it presents itself. And suddenly instead of having that arbitrated as well, it's in arbitration. Isn't there an argument to be made that here you have these three provisions, the carve-out, the statute of limitations restrictions, and the liquidated damages, and one can view the combination of the three as demonstrating the power that the earth grains had in shoving and pushing this agreement on these distributors? Well, Your Honor, on the IP and trademark claims, we agree that there are business justifications for the business to protect those claims. But this court in Tompkins specifically held that businesses are entitled to have protection for their IP and trademarks. But because they're entitled to protect their IP, does that then justify an arbitration agreement that looks like this, that has these three provisions that skew in favor of earth grains? Two responses to that. First, I believe the answer is yes. The California Supreme Court in Baltazar, this court in Tompkins, the California Supreme Court in Sanchez, all held that such a provision was not unconscionable. And if that provision is not unconscionable— Across the board ever? When it's so narrow and limited like in this case. Although that requires a determination that it's narrow and limited, and Judge Battaglia appears to have concluded that it was more than just kind of a limited little sliver. It was more substantial than that. Well, I believe Your Honor is referring to the fact that there are three separate provisions, but I think you have to look at each provision individually to decide if it is substantively unconscionable. If you agree that all three by themselves are substantively unconscionable, then you move on to the separability analysis. But what I'm—the first point I'm trying to make is that the California Supreme Court has held that a narrow carve-out like this, and Your Honors don't have to defer to Judge Battaglia on what the carve-out actually says. You can go and look at the cover disputes, excluded disputes, see that they're perfectly mutual except for the IP and trademark carve-outs, and that is just not unconscionable. Well, there's an additional carve-out or two, isn't there? Is one regarding injunctive relief— And they apply to both parties, Your Honor. And I just brought up the example of independent contractors suing us for injunctive relief in specific performance. Those apply both to contractors and to the company. So the only two that are not mutual are the IP, and again, Your Honor, the California Supreme Court a few years ago in Balthasar said that's not unconscionable when it's that narrow. So you seem to be suggesting that mutuality is something that will forgive all unconscionability in these contract terms. So you made that point with respect to the limited claim period, taking it down from years, literally, to 30 or 60 days, depending on the plaintiff, and that's like a 98 percent reduction in the limitations period. But doesn't California case law say that you can reduce or limit the limitations period, but it has to be reasonable? And I think it was Martinez where they found six months wasn't reasonable. Your Honor, how does 30 days, even 60 days, that's like the longest period in these contracts, how is that reasonable? Yes, Your Honor. So I first start by saying that that is a unilateral reduction of a statute of limitations case. All of the cases that the other side cited were unilateral reductions of statute of limitations. They haven't cited any mutual reductions that were held unconscionable. But even setting that aside, in this context, you have 30 days to provide notice to the to earth grains, and then you have 30 days to try to resolve the dispute informally, and then you have 30 days after that to file an arbitration claim. So it's actually 90 days to file the claim from when the dispute arises. But it's perfectly reasonable because this is a fresh bread distribution business. This contract is about delivering fresh bread every week to grocery stores, retail stores, and if there's a dispute about stale bread in the store or not getting enough bread or not being able to deliver to certain retail stores. And what does that have to do with, so for example, the claims here, which were, I think that the employees were miscategorized or mischaracterized as independent contractors rather than employees. That has nothing to do with what they're delivering or if a loaf of bread is stale. Well, Your Honor, we're looking at the contract when it was entered, and the contract when it was entered, the main focus of this contract is about bread distribution, which is what the contract is for. But even looking at these claims, if the plaintiffs believe that they were misclassified, it's perfectly reasonable to expect them to tell Earthgrains or Bimbo within 60 days that they believe that they're misclassified. This isn't a case of entering an employment agreement. This is a case of entering a distribution agreement and paying over $100,000 to buy a distribution route. And the essence of the agreement in Article 2 is that they are independent contractors, not employees. You haven't said anything based upon the nature of this agreement, this contract, that would suggest that this different treatment, this 30 and 60-day statute of limitations, made sense. It should be upheld as it applied in this case. You could say that as to any contract, that, oh, well, you should know within 30 days or 60 days if there's a problem or an issue in your employment and wage and hour issues. And so that's just the way it is. I mean, I don't understand the argument about how something about this business model supports this restriction to 30 days or to 60 days. I mean, 30 days, an employee is barely getting an understanding of their job, getting an understanding of the people that they work with, what they're required to do. And ultimately, it just seems like a restrictive period of time or overly restrictive. One other point that I'll make, Your Honor, is California law actually incorporates tolling doctrines into contractual shortening of statute of limitations. And so in this case, for instance, that reasonableness and actually becoming aware of all the circumstances and your legal rights would all be incorporated in. So there's no argument here that they would have had to have let us know 30 days into their contract that they thought that they were misclassified. It's when they discovered it. And in this case, they waited six months to two years after ending their relationship with BMO and EarthGrants to bring up these claims. But Your Honor, turning to the severability point, many cases, including cases cited by plaintiffs like Pereira, have severed three or four provisions that were held unconscionable that are related to the provision here, such as fee-shifting provisions and cost-sharing provisions and carve-outs from arbitration. This Pereira case from 2019 severed four unconscionable provisions. And the reason it did that was because those provisions were collateral to the main purpose of the contract, which was arbitrating claims. And none of the rules of the arbitration itself were unfair or one-sided. So Armendariz, the California Supreme Court case, laid out five things that have to be true for arbitrations to be fair and not one-sided. And they haven't disputed that all five things are true about the arbitration provision here. I guess I'm wondering, based on that line of reasoning, why wouldn't it be true that provisions related to arbitration or even dispute resolution generally would always be collateral under your reasoning? Well, Your Honor, I mean, I can imagine a situation where they wouldn't be, such as if it said one side has to arbitrate all their claims and the other side never has to arbitrate. Something like that is clearly not mutual, and there's other, you know, that's obviously an extreme example. Right, but it's still sort of, based on the line of reasoning that you were just going through, they would still be collateral to the idea of this contract is about delivering bread. Well, it wouldn't, Your Honor, because there's nothing that you could delete and still have a mutual arbitration agreement between the parties. And so the other line of theories in California cases is if you can just delete the provision and you don't have to rewrite the contract at all, then it's severable and it's collateral. Here, you could easily delete Section 13.11, for example, and still have a valid arbitration agreement that's bound by AAA rules, which this Court has held are perfectly fair and neutral. And none of the five fairness factors from Armendariz are, yeah, violated. Your Honor, I'd like to, I see my time is up, unless Your Honor has any other questions. No. All right, thank you. And unfortunately, we, you went through your rebuttal time, but I'll give you a couple of minutes. Okay, thank you. Good morning, Your Honors. I'm Sean Markley. I represent the plaintiffs below and respondents here on appeal. We believe the Court should affirm for both of the reasons that the lower court found given the focus on substantive unconscionability. I'll just go ahead and start there and try to address some other topics if I'm able to. Let me start with this notice provision. And I do think that all of these things are related and that we can't necessarily look at them independently. To Judge Flores' point, if you start with the premise that the claims most valuable to franchisees, which are misclassification, employment, and unfair competition claims, are all directly called out in the covered claims section, whereas the claims most important to BIMBO, being intellectual property, proprietary business information, are all reserved for court with the usual rights and remedies, usual statutory periods. I think the other side, I mean, your friend across the aisle does bring up a reasonable point that at least the specific performance, it's written to be mutual, and he says that there is a claim right now that is being brought against BIMBO that's not going through the arbitration process. So it only goes so far. Some of the excluded disputes, I think there are five in total, three are mutual for specific performance and a few other things, but the two that are non-mutual are very important. And this is somewhat of a recurring issue of businesses basically saying, I need to protect my IP, so I want my usual rights and remedies. I want to be in court. I want the right to appeal and be in front of a panel if the lower court gets it wrong. These are things you don't have when you've got arbitration and you go through a more abbreviated proceeding. You don't get full discovery that you'd get under the federal rules. And so for, you know, if these guys drive around using BIMBO's business system, their confidential business information, if my clients violate that, which is highly important to BIMBO, then, you know, we have the normal statute of limitations. You could bring a four-year claim there. Same thing for intellectual property. Those claims usually range two to three years. They could wait all the time they wanted to. They'd have all their normal rights and remedies. And so we think that it's, you know, that colors the waiver and the notice period, especially when you look at BIMBO's franchise disclosure document. They list all of the prior litigation that's been brought against them, and there's dozens of these misclassification employment claims brought against them. They specifically call those out to be covered disputes and send those to this, you know, 30- to 60-day notice period, which is, you know, especially for workers who are making their livelihood. You know, they're getting a check from BIMBO every single week during the course of their, you know, employment with them. And to make them say, well, raise all your issues and basically sue your current employer who's providing for your family and your livelihood is quite unrealistic. And I think they know that the reality is they're going to duck out of a lot of these employment claims through that notice requirement. Let me ask you, how does this case compare to the other cases that Mr. Nelson was referring to that there's three, four carve-outs and they were upheld after the carve-outs? Yeah, I think the carve-outs depend on the severity of the clauses and how much overreach is going on. In some of these other cases, what types of, I guess, what types of provisions were carved out that weren't as serious? So, in terms of the carve-out, you know, if, for example, if I could see a case where there's, you know, a two-year statute of limitations instead of four and, you know, I do want to touch on that point a little bit. But to directly answer your question, I think Judge Battaglia below even said, I couldn't find a single other case that even tried a 30- or 60-day window. And so, these aren't the types of provisions that have been carved out. And those reference, I think, to a case called, I think, Pereira or something like that that's involved four carve-outs. Are you familiar with that case and can you distinguish it? Yes. I'm not sure exactly what substantive provisions were at issue there. I do know that cases like Lim versus T-Force Logistics, that's a Ninth Circuit case. I believe there were two to three unconscionable provisions in that case and they upheld the lower court's determination not to sever under those circumstances. And you could also look at the De Leon case, which held that as few as two unconscionable provisions, depending on their severity, would support not severing here. And so, you know, I think when you look at the attempt to force the claims most important to franchisees into an unfair arbitration process that limits a notice period to 30 to 60 days, and then you look at the, I mean, the $10,000 liquidated damages clause is one of the worst things I've read in a employment or franchising agreement. And I've seen many of them. To basically, you know, as Retalia found, threaten and kind of coerce your workers into avoiding challenging this clause and succeeding on overcoming that, you know, is pretty abhorrent. And so I think to, you know, look at heavily truncated statute of limitations, an outright waiver of certain claims like the POGA representative action here would be waived under the agreement at Section 13.8. Are there California Supreme Court cases that have approved these, if not limited carve-outs, these carve-outs for IP and related issues? Yes. I actually, and I plan to send the court a letter on this case. The California Supreme Court just issued a case called Ramirez v. Charter Communications that set up 551P3D520. And this takes up the exact issue presented here. They had a one-way carve-out for intellectual property claims and proprietary business information. And the California Supreme Court held that that lacked mutuality and was, in fact, unconscionable. And so, again, I'll send a letter, a court a letter on that. It's a very new case. I think it came out about two weeks ago. And in that case, did they sever or did they just say that the whole arbitration provision was unconscionable? I think there was three unconscionable clauses at issue there. And they upheld the decision not to sever. So your opposing counsel argues that these provisions could have been severed and that California law would support that. And presumably, they're arguing it was an abuse of discretion for the district court not to sever. How do you respond to that? Yes, Your Honor. So initially, there is an abuse of discretion standard applied here. I think the district court, in seeing all the cases before him, likely knows what cases are going to be brought by franchisors and what cases are more likely brought by franchisees. I think he made a common-sense determination on these things and found that, at the end of the day, given the mix here of both procedural and substantive uncomfortability, where we do have an industry-leading franchisor that's $11 billion in revenue every year and you have blue-collar workers who are essentially looking for a paycheck, that given that procedural posture that it's incumbent upon the bimbos of the world to write at least a somewhat fair contract. And when they don't do that, if we just kind of clean it up for them, we say, oh, the $10,000 liquidated damages or the notice period or the disparity of claims that are in and out of arbitration, if we simply rewrite that for them, you encourage these defendants to overreach time and time again. And there's good discussion of that in the Lim v. T-Force Logistics case. That's another Ninth Circuit decision that, again, upheld the lower court's decision not to sever on an abusive discretion standard. I also want to note that while mutuality is certainly relevant to substantive unconscionability, this is not the only way to prove substantive unconscionability. You can look at overly harsh terms. And basically, I think as Armendar has framed it, this is the California Supreme Court, they said, is arbitration an alternative forum where you maintain your same rights, your same remedies, your same statutory periods, or is this being used as sort of not just arbitration, but also a waiver of rights clause, a waiver of statutory periods clause? And when you start to bundle these things in with arbitration, you're not simply sending someone to an alternative, faster, more efficient forum. You're sending them to a less favorable forum that's meant to advantage you. I think that's exactly what's happened here. I did want to touch briefly on procedural unconscionability. I believe Judge Bade had mentioned that there was perhaps a minimal degree here based on the adhesive nature of the contract and the respective bargaining power of the parties, given the kind of franchising and employment context we have here. So I do agree, of course, with that, that that creates some amount of procedural unconscionability. But I think there are other enhancing factors here that Judge Battaglia accurately pointed out, because we also look at surprise in addition to the bargaining power and adhesion factors. And here, we haven't spent much time on the contract formation issue, but even if we were to disagree with our position on that, at the very least, that language is quite confusing to represent to someone that a provision may not be enforceable. And then to turn around and attempt to enforce that provision, we think that creates additional amounts of surprise here. This is also a very long, dense legal contract where arbitration does not appear until page 20 out of 34, and there's no special attention or special heading or signature requirement on that that would draw the franchisee's attention to this very important, not just arbitration regime, but waiver of rights regime and waiver of statutory periods regime. Is that required? That's a good point. So I understand their argument on that front that you don't have to. In other words, you can have an enforceable arbitration agreement that doesn't require a separate signature or a separate acknowledgement, but that doesn't eliminate the fact that that does create some procedural unconscionability that adds more weight to the procedural unconscionability scale. If you're going to alter the party's rights through an important provision in a contract, whether that's you don't get your day in court, you don't have your normal statutory periods, you're outright waived certain claims like representative actions, you're going to be threatened with $10,000 in liquidated damages. If you're going to have a provision like that, to not highlight it or to call the franchisee's attention to that specifically, I do believe that increases procedural unconscionability, even though the contract, if it were fair, could still be enforced even in the absence of that. So I think those are discrete issues there, and that does enhance procedural unconscionability. Mutuality can be part of the consideration for procedural unconscionability. So I'm just curious, all of the arguments that the parties have made regarding the mutuality or lack of mutuality just for formation purposes, do we think about that in terms of the procedural unconscionability? I've always viewed mutuality as a substantive issue. I think procedurally you look more at how the agreement is presented. Is it clear? Is it adhesive? Is there discrepancy in bargaining powers? I think mutuality goes exclusively to substantive unconscionability in my mind. Going back to Ramirez versus charter communications that you mentioned a moment ago, I thought you provided that case in response to a question of whether or not you were familiar with a case that had found that these types of carve-outs are not permitted, and I don't see that there's any reference there. There are four unconscionable provisions in the case that were raised and that the Supreme Court found, in fact, that exist, and then there was a determination to remand for further proceedings. But are you familiar with a case that does address this issue head-on about these carve-outs for IP? Yes. So the Armendariz case by the California Supreme Court addresses that, and in that case they discussed that the burden is on the defendant to provide adequate justifications for those clauses, that it's possible that those can be enforced. But as Judge Battaglia found here and in the lower court, they provided no justification. There was no declaration saying, here's why we need to do this, and here's why IP claims or proprietary business information claims are unique. They cite here on appeal essentially to their own contract, which says that. . . Is the assumption that these IP carve-outs are across the board always justified? I'm not aware of any cases as they're always justified. My understanding from the Armendariz case, which is a California Supreme Court case. . . Or usually justified? I think they can be justified is probably how I would frame it, and I think here there was a lack of them justifying that in the lower court. I think here on the. . . It's fact-dependent on. . . Exactly. I'm not sure of the ins and outs on the courts of why they've upheld those in certain circumstances. I think on appeal they also tried to emphasize that they may need injunctive relief or temporary or, I guess, fast relief from a court for intellectual property claims or for the proprietary business claims. I will just note that the carve-outs for those claims don't limit them to injunctive relief. You don't need to go file a preliminary injunction to get into court for your IP rights. They could file a garden variety case with no injunctive remedy, so their excuse of sort of needing a faster response from the court kind of falls flat to me. Additionally, there are expedited procedures through AAA, as we had noticed. You can go get a temporary restraining order through an arbitration provider the same way you can in court. So we feel those justifications fall flat and also weren't even raised in the lower court. If we were to conclude that only the liquidated damages provision was unlawful, do you agree that that could be severed? Again, just given the, I guess, massive overreach on that provision and the fact that we think Judge Battaglia appropriately determined that, you know, to not even accept the same $10,000 for yourself as liquidated damages, let alone, you know, to force a blue-collar worker who makes not a lot of wages, $10,000 is a huge disincentive for them to challenge this provision. And so I think given the severity of that and the overreach there, I would say that that really colors the rest of this agreement and would be sufficiently egregious enough, I guess, to not sever that and to refuse to enforce the agreement. I see I'm basically out of time here, so thank you. Thank you. Mr. Nelson. Thank you, Your Honor. I appreciate it. Just to make two points, Your Honor. First, on the IP carve-outs, we cited several cases that have held that if there is justification in the contract for an IP or trademark carve-out, that it is not unconscionable. One is this Court's case in Tompkins. Another is the California Supreme Court case in Balthasar. And another is a Southern District of California case called Smith v. Metadata. And, Your Honor, I'll also point out, Judge Curiel, that your decision in HESA v. Spirit is another or Sprint is another decision that did the exact same thing as the cases that we cited in our brief. On the Ramirez case, the carve-out was much broader than just IP and trademark. And I offer to submit supplemental briefs on that case. The other side has never brought up that case before. But I'm familiar with it, and it is a much broader carve-out. And in that case, the Court did not affirm the decision not to sever. In fact, it remanded and said you applied the wrong severance analysis. And so my second point, Your Honor, on severance is the Court here did the same thing. It abused its discretion because it applied the wrong standard. It never asked whether the central purpose was illegal. It never asked whether these provisions are collateral to that central purpose. In this Court's decision in Pau Blanc, it said that all cases deciding severability have to engage with that analysis. And I think if this Court engages in that analysis, it's clear that these provisions are severable here. So unless Your Honors have any other questions, I urge this Court to reverse. All right. Thank you very much. Counsel, thank you both for your arguments this morning. They were very helpful. And this case is submitted.
judges: BADE, FORREST, Curiel